IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| DAVID A. WHITE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 5:11-cv-3471-LSC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OF OPINION

I.   Introduction

The plaintiff, David A. White, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI").  Mr. White timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. White was thirty-six years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a ninth grade education. (Tr. at 93-93, 171.) His past work experiences include employment as a grounds keeper.  (Tr. at 83.) Mr. White claims that he became disabled on September 15, 2007, due to a back injury,

herniated discs, degenerative disc disease, and depression. (Tr. at 220.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id*. If they do not, a

determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Mr. White has not engaged in substantial gainful activity since September 4, 2008, the application date. (Tr. at 15.) According to the ALJ, Plaintiff's chronic back and leg pain secondary to degenerative disc disease; spondylosis; bulging disc at L4-5 L5-S1 level; and some spinal stenosis secondary to an injury in October 2005 are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ determined that Mr. White has the following residual functional capacity:

> to perform light work in regards to which he can lift/carry 20 pounds occasionally; 10 pounds frequently; sit 6 hours and stand 4 hours with breaks; walk 4 hours with customary breaks; no more than occasionally manipulate stairs, kneel, crouch, stoop, but not repetitively; avoid ladders, crawling, unprotected heights, heavy vibratory jobs, cold exposure; and unlimited fine and gross manipulation.

(Tr. at 15-16.)

According to the ALJ, Mr. White has no past relevant work; he is a "younger individual;" he has a "limited education;" and he is able to communicate in English, as those terms are defined by the regulations. (Tr. at 16.) The ALJ determined that transferability of job skills is not an issue because Plaintiff has no past relevant work. (*Id.*) Applying the medical vocational rules as a framework, and considering the testimony of a vocational expert ("VE"), the ALJ found that there are a number of jobs in the national economy that the plaintiff is capable of performing. (Tr. at 20-21.)[1] The

---

[1] At Plaintiff's second hearing, a VE testified that an individual with Plaintiff's age, education, work history, and RFC could perform work as a nut sorter, a wire wrapper, and a stuffer. (Tr. at 83-84.) Although the ALJ in his decision mistakenly cited the jobs a VE at the first hearing identified in response to a different hypothetical question (Tr. at 21, 104-05), such error was harmless, as the VE at the second hearing identified a significant number of jobs in the national economy Plaintiff could perform. *See Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987). Further, Plaintiff has not raised this error as an issue in his brief, and has thus waived it. *See United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1279-80 (11th Cir. 2009).

ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, since September 4, 2008, the date the application was filed." (Tr. at 21.)[2]

## II.     Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial

---

[2] For SSI benefits, a claimant becomes eligible in the first month he is both disabled and has filed an SSI application. *See* 20 C.F.R. § 416.501(2011); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Thus, the relevant time frame for SSI benefits was September 4, 2008, the date Plaintiff protectively filed for SSI benefits, through the date of the ALJ's decision.

evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion

Mr. White alleges that the ALJ's decision should be reversed and remanded for two reasons. First, Mr. White contends that the ALJ did not accord enough weight to the opinion of his treating physician, neurologist Jeffrey T. Harris, M.D. ("Dr. Harris"). Second, he contends that the ALJ accorded too much weight to the opinion of the non-examining medical expert who testified at his hearing, board-certified orthopaedist Allan Levine, M.D. ("Dr. Levine").

A.   Treating Physician's Opinion

Plaintiff contends that the ALJ did not give proper weight to his treating physician's functional capacity opinion expressed in an August 2009 RFC questionnaire. (Tr. at 387-90.) In the questionnaire, Dr. Harris indicated that he treated Plaintiff for lumbar stenosis and low back pain. (Tr. at 387.) He stated that Plaintiff's medication caused drowsiness, sedation, and impaired judgment, which may implicate Plaintiff's ability to work. (Tr. at 387.) Dr. Harris also stated that no emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations, but then limited Plaintiff to low-stress jobs. (Tr. at 388.) Dr. Harris further opined, among other things, that Plaintiff's pain would constantly interfere with his ability to maintain attention and concentration; he could not sit or stand/walk for more than two hours each in an eight-hour workday; he could rarely twist, stoop, crouch, and climb ladders; he would need five or six unscheduled fifteen minute breaks each day; and he would likely miss more than four days of work per month. (Tr. at 389-90.)

Within the classification of acceptable medical sources are the following different types of sources which are entitled to different weights of opinion: 1) a treating source, such as Dr. Harris, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has

provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is a "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502. The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). The regulations and case law indeed set forth a general preference for treating sources' opinions over those of non-treating sources, and non-treating sources over non-examining sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985).

As such, a treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v.*

*Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted).  "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when: "(1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)(citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

In this case, the ALJ provided several reasons for giving little weight to Dr. Harris's questionnaire opinion.  The ALJ acknowledged Dr. Harris was a treating source, but explained that Dr. Harris's functional capacity opinion was inconsistent with his own records as well as other records in the file.  (Tr. at 19.)  The ALJ noted the objective findings did not show the degree of limitation Dr. Harris suggested.  (Tr. at 16.)  Further, the ALJ indicated he found Dr. Harris's opinions to be conclusory.  (Tr. at 19.)

The ALJ's decision to accord little weight to Dr. Harris's questionnaire opinion

is supported by substantial evidence. First, Dr. Harris's functional capacity opinion was not consistent with the objective medical evidence in the record, including his own treatment notes. At several examinations, Dr. Harris found Plaintiff had deep tendon reflexes at 2/4, which meant that Plaintiff's reflexes were normal, normal motor strength at 5/5, normal gait, and intact balance and coordination. (Tr. at 16, 20, 301, 305, 307, 393; *see also* Tr. at 313.) At an examination in December 2008, Dr. Harris noted Plaintiff's gait was limited by pain and his balance and coordination were "mildly" impaired. (Tr. at 379.) However, by August 2009, he observed Plaintiff's gait was normal; his balance and coordination were intact; and his sensory modalities were intact. (Tr. at 393.) While at some examinations Dr. Harris noted some decreased sensation (tr. at 301, 305, 307, 379), Plaintiff at his hearing denied having numbness. (Tr. at 44, 72.) Other sources on examination also noted intact sensation. (Tr. at 313, 357-58, 374, 376, 409.) For example, Dr. John H. Lary, a consultative examiner, observed in October 2008 that though Plaintiff walked with a mild limp, he was also able to heel and toe walk, assume and arise from a squat and a kneeling position, and balance without any aids. (Tr. at 313.) A December 2008 MRI of Plaintiff's lumbar spine was negative for spinal stenosis, and there was no evidence of nerve root compression. (Tr. at 19, 73, 385.) A psychological consultative examiner

also observed that Plaintiff's gait, balance, and coordination were unimpaired. (Tr. at 18, 324.) Additionally, Plaintiff did not need a cane or other assistive device. (Tr. at 18, 311, 389.) There is no indication that Dr. Harris or any other source recommended surgery. (Tr. at 20, 95, 323.) *See Peters v. Astrue*, 232 F. App'x 866, 871 (11th Cir. 2007) (noting that "conservative" treatment is a good reason to discount a treating physician's opinion). At several examinations, Plaintiff even reported improvement with his treatment. (Tr. at 20, 303, 305, 307, 381, 383, 393.) Further, Dr. Levine, and Keith H. Langford, M.D., a state agency consultant, both agreed that the objective findings in the record did not support a finding of significant limitations beyond a range of light work. (Tr. at 74-75, 328- 34.) Dr. Levine explained that Dr. Harris was identifying limitations that are not compatible with someone who has normal reflexes, normal strength, normal gait and normal sensation. (Tr. at 79-80.)

The ALJ also appropriately found that the medical evidence did not support Dr. Harris's findings of mental limitations imposed by Plaintiff's condition. *See* 20 C.F.R. § 416.927(d) (4) (providing that more weight is given to opinions consistent with the record). First, as both the ALJ and Dr. Levine observed, Dr. Harris's questionnaire was internally inconsistent. (Tr. at 16, 74.) Dr. Harris stated that emotional factors did not contribute to the severity of Plaintiff's symptoms and functional limitations, but

then stated that stress increased Plaintiff's pain and thus limited him to low stress jobs. (Tr. at 16, 74, 388.) Also, as the ALJ observed, Dr. Harris stated Plaintiff's medication caused drowsiness, sedation or impaired judgement, but there was no indication of this in the medical records. (Tr. at 17, 19-20.) At examinations, sources frequently found Plaintiff alert and oriented, and his records showed no known drug allergies. (Tr. at 16, 301, 305, 307, 357-59, 374, 376-77, 393, 412.) Further, the evidence does not support Dr. Harris's conclusion that Plaintiff's pain or symptoms constantly interfered with his attention and concentration. Again, Dr. Harris's own notes reflect he often observed Plaintiff to be alert. (Tr. at 301, 305, 307, 393.) At a neuropsychological evaluation in November 2008, Carol Walker, Ph.D. observed Plaintiff's attention and concentration were well maintained during the evaluation and his insight and judgment appeared to be good. (Tr. at 18, 325-26.) She found Plaintiff's capacity to understand and follow instructions was unimpaired. (Tr. at 18, 326.)

Finally, the ALJ also appropriately considered that Dr. Harris's opinion was conclusory. (Tr. at 19.) The Eleventh Circuit has stated that a "treating physician's report 'may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.'" *Crawford*, 363 F.3d at 1159 (quoting *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991)). Dr. Harris did not include with the questionnaire the

results of a physical examination or adequately explain how he reached his conclusions. (Tr. at 387-90.) *See* 20 C.F.R. § 416.927(d)(3) (providing more weight should be given to opinions with supporting explanation). While Dr. Harris noted Plaintiff had lumbar stenosis and low back pain and identified MRI evidence showing disc bulges and compression of the thecal sac, the diagnoses of a condition alone is insufficient to show functional limitations. *See Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987) (the mere diagnosis of condition says nothing about why the condition makes it impossible for the claimant to be gainfully employed); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."). There is no indication from Dr. Harris's notes that he ever tested Plaintiff's abilities to sit, stand, walk, lift, carry, twist, stoop, crouch, or climb. (Tr. at 301-08, 378-85, 392-97). Additionally, as other medical doctors observed, Dr. Harris's objective findings in his progress notes did not indicate a degree of limitation beyond the capacity to perform a range of light work. (Tr. at 74-75, 328-34.)

In sum, considering that Dr. Harris's RFC questionnaire was at times internally inconsistent and conclusory, and not consistent with the other objective medical

evidence of record or his own treatment notes, good cause existed for the ALJ to give lesser weight to Dr. Harris's opinions, despite the fact that he was Plaintiff's treating physician.

    B.    Non-Examining Medical Expert's Opinion

Plaintiff also argues that the ALJ gave too much weight to Dr. Levine's opinion because he was a non-examining source. Plaintiff did not object to Dr. Levine being called as an expert witness at his June 21, 2010, hearing. (Tr. at 71.) At the hearing, Dr Levine testified that he had reviewed Plaintiff's medical record. (Tr. at 72.) Dr. Levine opined based on his review of the medical evidence, and allowing for expected pain, that Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds; he could sit six hours, stand four hours, and walk four hours out of eight hours with customary breaks; he could occasionally manipulate stairs, kneel, crouch, and stoop but not repetitively; and he should avoid ladders, crawling, unprotected heights, heavy vibratory machinery and extreme cold exposure. (Tr. at 74-75.) Dr. Levine identified objective medical evidence that supported his opinion such as Dr. Harris's examination findings that Plaintiff had normal reflexes, strength, gait, and sensation and the MRI evidence indicating no spinal stenosis or nerve root comprehension. (Tr. at 73-74, 79-80, 301, 305, 307, 393.) Dr. Levine also explained how the degree of limitations Dr.

Harris identified were not supported by the medical records, and noted that Dr. Harris made inconsistent statements with regard to whether emotional factors contributed to Plaintiff's symptoms and limitations. (Tr. at 74, 79-80, 388.)

As explained above, Dr. Levine is classified as a non-examining source, which is a "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502. The regulations provide that an ALJ may ask for and consider the opinion of a medical expert, such as Dr. Levine, on the nature and severity of a plaintiff's impairments and whether the impairment equals the requirements of any impairment listed in Appendix 1. *See* 20 C.F.R. § 416.927(f)(2)(iii). An ALJ evaluates a medical expert's opinion using the factors enumerated in 20 C.F.R. § 416.927(d) that are used to evaluate an examining or treating source's opinion. *See* 20 C.F.R. § 416.927(f)(2)(iii) (providing that when ALJs consider these opinions, they will evaluate them using the rules in paragraphs (a) through (e) of the regulation). The regulations and case law indeed set forth a general preference for treating sources' opinions over those of non-treating sources, and non-treating sources over non-examining sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). However, "the

weight due to a non-examining physician's opinion depends, among other things, on the extent to which it is supported by clinical findings and is consistent with other evidence." *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873 (11th Cir. 2011). Importantly, the opinions of non-examining sources may override opinions from treating sources, provided that the non-examining source's opinion is supported by the record. *See* 20 C.F.R. § 416.927(d), (f); 56 Fed. Reg. at 36, 936-37, 36, 953, 36, 961, 36, 969.

In this case, the ALJ explained that he gave Dr. Levine's opinion substantial weight as he had the opportunity to review the medical evidence as well as hear the testimony of Plaintiff. (Tr. at 19.) The ALJ also considered that Dr. Levine was a board certified orthopaedist (Tr. at 19).

Given that Dr. Levine's opinion was consistent with the medical evidence, he provided an explanation for his opinion and he was a specialist in orthopaedics, the ALJ appropriately gave Dr. Levine's opinion substantial weight. *See* 20 C.F.R. § 416.927(d)(3)-(5) (listing consistency, supportability, and specialization as relevant facts when weighing medical opinions). In any event, the ALJ did not rely exclusively on Dr. Levine's opinion in determining Plaintiff's RFC as Plaintiff alleges. This is evident in the ALJ's summation paragraph in his RFC analysis. The ALJ cited the

MRI evidence, noting it was negative for spinal stenosis and nerve root compression. (Tr. at 19, 73, 385.) The ALJ also noted the lack of evidence showing Plaintiff's medication caused side effects (tr. at 301, 305, 307, 357-59, 374), the conservative nature of Plaintiff's treatment (tr. at 95, 323), the evidence reflecting Plaintiff reported improvement with treatment (tr. at 303, 305, 307, 381, 383, 393), and the unremarkable objective findings with regard to strength, gait, balance, and coordination. (Tr. at 19-20, 301, 305, 307, 313, 324, 393). Thus, the ALJ did not consider Dr. Levine's opinion alone, as Plaintiff suggested, but considered the entire medical record. (Tr. at 19-20.) The Eleventh Circuit has recently stated that where the evidence supports a contrary conclusion to the treating physician's opinion, "the ALJ [i]s not prohibited from reaching that conclusion simply because non-treating physicians also reached it." *See Forrester v. Commissioner of Social Sec.,* 455 F. App'x 899, 902 (11th Cir. 2012).

IV.  Conclusion

Upon review of the administrative record, and considering all of Mr. White's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this <u>12th</u> day of <u>November 2013</u>.

                                                     *[signature]*

                                        L. SCOTT COOGLER
                            UNITED STATES DISTRICT JUDGE
                                                                             [160704]